FLEMINGS v. STATE.

(In Banc. June 8, 1942. Suggestion of Error Overruled July 7, 1942.)

[8 So. (2d) 457. No. 34992.]

Harry K. Murray, of Vicksburg, for appellant.

94

**Greek L. Rice**, Attorney-General, by **Geo. H. Ethridge**, Assistant Attorney-General, for appellee.

**Roberds, J.**, delivered the opinion of the court.

Appellant was indicted jointly with Lawrence Wright for the murder of one Bates. A severance was granted.

The jury returned a verdict of guilty as charged and a death sentence was imposed.

Appellant contends that the evidence was insufficient to support the verdict and that his request for a directed verdict should have been granted.

The proof shows that appellant was twenty-five years of age. He had already served two terms in the State Penitentiary for burglary. He had been out of the penitentiary about four months when the events herein related occurred.

Appellant and Wright were friends. Wright was twenty years of age. Appellant approached Wright about 5 o'clock in the afternoon before Bates was killed that night. It was agreed between appellant and Wright that they would arrange for Bates, a taxi driver, to take them into the country that night and they would assault Bates and rob him on that trip. Wright, according to the understanding, procured a piece of iron with which the assault would be made. They agreed that they would divide the money and on Monday they would flee to Monroe, Louisiana. This was Saturday. In accordance with the understanding, appellant contacted Bates about 7:30 o'clock that night, and Wright, Bates and appellant proceeded to drive out of Port Gibson on old Highway No. 61, Bates driving the taxi, with Wright on the front seat beside him and appellant on the back seat. About two miles out of Port Gibson, appellant touched Wright on the back, which was the signal for Wright to pass back to appellant the piece of iron. Wright did that, covering the iron with a pair of gloves which Wright had. Appellant then said to Bates that he and Wright would get out of the taxi and Bates slowed down. Appellant then struck him over the head with the piece of iron, crushing his skull. Bates fell against Wright and Wright crawled over his body and took the steering wheel and continued to drive for about one mile. During the journey, Bates showed signs of life and appellant pro-

ceeded to strike him in the head again. Even after this, Bates moved again, and appellant struck him in the head. Bates did not move any more. His skull was badly crushed. Wright and appellant proceeded to rifle the pockets of their victim. They got about $28.65 in money. They then ran the automobile off an embankment some six or seven feet high, but they failed to turn out the lights and another person was attracted to the car. Wright and appellant then started walking back to Port Gibson. They met a car and hid beside the road. They separated and by agreement met at a bridge about two miles out of Port Gibson. There, they divided the money and proceeded back to Port Gibson, where they separated, Wright going to his home and appellant going to a restaurant called the Blue Moon. They were arrested Sunday. In addition to the foregoing, the officers found a small amount of cash on the front seat of the automobile and on the running board. Wright had said he threw the gloves into a field. They were found there. There was also proof that the road was muddy and that on Sunday morning appellant was seen washing mud from his shoes. He borrowed a pair of shoes that morning from a friend. There was also proof that appellant and Wright were at their appointed places, as agreed, for the purpose of arranging with Bates to take them on this trip.

The foregoing facts are shown by the testimony of Wright, the written confession of appellant, introduced without objection, and testimony of disinterested witnesses.

The defense of appellant was an alibi. He said he went to a picture show about the time the other proof showed that he started on this trip, and that he remained in the picture show until 9:30 o'clock, about the time the other proof shows he and Wright got back to Port Gibson. But, his being at the picture show stands upon his testimony alone. No other witness testified that he was there.

Witnesses testified that he was at the Blue Moon but they put him there first around 10 o'clock, which would not conflict in time with his fateful journey.

From this, it is difficult to see how any jury could have returned a different verdict.

The other error assigned is the refusal of the lower court to give appellant this instruction: "The Court instructs the jury for the defendant that if they believe from the evidence that the defendant made any confessions or admissions of guilt, such confessions or admissions are to be received by the jury with great caution, and, unless supported by other proof in the case, are not sufficient to convict."

Counsel for appellant cites no Mississippi authority in support of his contention that this instruction should have been given, but apparently it was copied from one set out in the case of Harmon v. State, 168 Miss. 417, 150 So. 904, where the court held it was not error to refuse it. Without deciding whether this instruction should be given in any, and, if so, what case, it was not reversible error to refuse it in this case, where the verdict of the jury was supported by abundance of testimony other than the confession of appellant. For a general discussion of the subject see Vol. XII, No. 3, Mississippi Law Journal, March, 1940, page 291; also Keithler v. State, 10 Smedes & M. 192; Brown v. State, 32 Miss. 433; Hogsett v. State, 40 Miss. 522; Ellis v. State, 65 Miss. 44, 3 So. 188, 7 Am. St. Rep. 634; Bobo v. State (Miss.), 16 So. 755; Haynes v. State (Miss.), 27 So. 601; Thompson v. State, 73 Miss. 584, 19 So. 204; Renfrow v. State, 154 Miss. 523, 122 So. 750; Harmon v. State, supra.

The verdict and sentence of death must be affirmed, and Friday, July 31, 1942, is fixed for the date of execution.

Affirmed.